# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHAD J. LURVEY,**

    Petitioner,

    v.                                      Case No. 14-CV-226

**MICHAEL DITTMANN,**

    Respondent.

## DECISION AND ORDER

    Chad J. Lurvey, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Lurvey was convicted of two counts of first degree intentional homicide. (Am. Habeas Petition at 2, Docket # 6.) Lurvey was sentenced to two consecutive life terms without parole. (*Id.*) Lurvey alleges that his due process and confrontation rights were violated when the prosecution surprised the defense and utilized drug dog search testimony that it had promised not to use. (*Id.* at 6.) Lurvey further alleges that his due process and confrontation rights were violated when the trial court approved the prosecution's use of "from the grave" hearsay. (*Id.* at 7.) For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

    On June 30, 2011, a Waukesha County jury found Lurvey guilty of two counts of first degree intentional homicide. (Judgment of Conviction, Answer to Habeas Petition ("Answer"), Exh. A, Docket # 14-1.) On August 24, 2002, Brian Lazzaro and Andrew Long disappeared. (*State v. Lurvey*, 2011AP2881(Wis. Ct. App. May 8, 2013), Answer, Exh. E at 2, Docket # 14-5.) Both Lazzaro and Long were involved in the drug trade and Lurvey stored drugs for Long on his property. (*Id.*)

Lurvey's residence was located on a large parcel of family-owned land containing, in part, a private pond, woods, storage buildings, and a mechanical shop. (*Id.*) The shop was used by Lurvey and his friends to work on cars. (*Id.*)

Police learned that Lazzaro and Long had visited Lurvey at his shop on August 24, 2002, in connection with a drug debt. (*Id.*) Lurvey told police that he gave $5,000 to Long in partial settlement of the debt and that Lazzaro and Long then drove away in Lazzaro's Dodge Durango. (*Id.*) Lurvey admitted storing large amounts of cocaine and marijuana for Long. (*Id.*) At the time of the disappearance, fifteen pounds of Long's marijuana was stashed in Lurvey's garage in the trunk of a car owned by Long. (*Id.*) Lurvey initially told police he had destroyed the marijuana after Long's disappearance. (*Id.*) Lurvey later admitted this was a lie and turned the marijuana over to police. (*Id.*) Lurvey stated that he had also been storing four kilos of cocaine for Long in his basement. (*Id.*) Lurvey told police that Lazzaro and Long had taken the cocaine when they drove away on August 24, 2002. (*Id.*)

Lurvey was the last person known to have seen or heard from Long and Lazzaro. (*Id.*) In the weeks following the disappearance, the Durango was discovered in a bowling alley parking lot, and the victims' family members would visit the Lurvey property demanding additional information. (*Id.*) On September 5, 2002, while part of a small search party, Lazzaro's parents saw a body floating in the secluded Lurvey pond. (*Id.* at 3.) The body was that of Brian Lazzaro, and police immediately began a more extensive search. (*Id.*) Andrew Long's body was also discovered in the pond. (*Id.*) Both deaths were caused by multiple gunshot wounds. (*Id.*) Both bodies were bound with plastic cable ties, towing chains, and moving blankets. (*Id.*) Similar ties, chains, and blankets were located in Lurvey's shop. (*Id.*) One of Lurvey's shotguns was missing. (*Id.*)

In June 2003, police again searched the Lurvey pond and recovered some of the victims' personal items as well as Lurvey's missing shotgun. (*Id.*) The shotgun's barrel had been sawed off, and the sawed-off portion was also found in the pond. In the years that followed, there was a John Doe investigation. (*Id.*) In 2009, Lurvey was formally charged with two counts of first-degree intentional homicide. (*Id.*) After a twelve-day jury trial, Lurvey was convicted of both counts. (*Id.*)

Lurvey filed a direct appeal to the Wisconsin Court of Appeals, arguing that his due process and confrontation rights were violated when the circuit court allowed drug dog search testimony that the prosecution promised not to use and thus did not provide the defense with the underlying *Brady v. Maryland*, 373 U.S. 83 (1963) material. (Defendant-Appellant Br., Answer, Exh. B at 10, Docket # 14-2.) Lurvey also argued that he was prejudiced by the admission of hearsay testimony from one of the victims stating that he was afraid Lurvey was going to kill him. (*Id.* at 11.) The court of appeals affirmed Lurvey's conviction on May 8, 2013. (Docket # 14-5.) The Wisconsin Supreme Court denied Lurvey's petition for review on November 26, 2013. (Answer, Exh. H, Docket # 14-8.) Lurvey filed this petition for a writ of habeas corpus on March 4, 2014 (Docket # 1) and filed an amended petition on March 27, 2014 (Docket # 6).

## STANDARD OF REVIEW

Lurvey's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

- 3 -

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

- 4 -

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

**ANALYSIS**

Lurvey challenges his custody on two grounds. First, he argues that the Wisconsin Court of Appeals unreasonably applied the facts in light of the evidence presented at trial when it upheld the trial court's determination that the prosecutor's broken promise not to use drug dog search evidence at trial, in tandem with its refusal to furnish search dog discovery, was not prejudicial. (Petitioner's Br. at 13, Docket # 16.) Second, Lurvey argues that the court of appeals unreasonably applied clearly established federal law when it upheld the trial court's application of the state of mind hearsay exception to allow the prosecution to introduce Andrew Long's "from the grave" hearsay. (*Id.* at 21.) I will address each in turn.

    *1.    Use of Drug Dog Search Evidence*

The first ground on which Lurvey challenges his custody relates to the introduction of drug dog search evidence in relation to a hunting shack on the Lurvey property. Lurvey concedes that this ground was not fairly presented to the state courts as a confrontation clause violation and thus pursues it as a due process violation. (Docket # 16 at 8.)

Prior to trial, the defense filed a request for discovery asking the State to produce discovery materials concerning any dogs that were used in this matter. (Transcript of Jury Trial from June 17, 2011, Answer, Exh. K at 121-22, Docket # 14-11.) The State informed the defense that the evidence would not be used, so the defense was not supplied with the information. (*Id.* at 122.) At trial, the

- 5 -

State's first witness was Detective Captain Karen Ruff of the Waukesha Sheriff's Department. (*Id.* at 32-33.) The State asked Captain Ruff the following questions:

> State: When you searched the shack did you take a dog with you?
>
> Captain Ruff: Yes.
>
> State: What did the dog do?

(*Id.* at 121.) The defense objected to the question and moved for a mistrial. (*Id.*) After excusing the jury, the trial judge heard arguments and denied the defense's motion for a mistrial and overruled the objection. (*Id.* at 124.) After the jury returned, the State said that it was "going to ask a different question," (*id.* at 126) and Captain Ruff never answered the question "[w]hat did the dog do?" The State then asked Captain Ruff if any drugs were found in the hunting shack when it was searched on September 10, 2002, to which Captain Ruff responded no. (*Id.*)

During deliberations, the jury asked the following question: "Did they ever check for drugs in or around the hunting shack using dogs or other methods," to which the trial judge responded that "you must rely on your recollection of the evidence presented at trial." (Transcript of Jury Trial from June 30, 2011, Answer, Exh. U at 127, Docket # 15-12.)

While Lurvey states that he is challenging the court of appeals' finding regarding the drug dog evidence under § 2254(d)(2), which challenges a state court's determination of facts, it appears that he is in fact challenging both the court of appeals' factual findings and the court of appeals' application of *Brady*, which is a challenge under § 2254(d)(1). Regarding the court of appeals' factual determinations, under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon factual finding that ignores the clear and convincing weight of the evidence. *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010). Factual determinations made by the state court are

- 6 -

presumed correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Lurvey argues the court of appeals made several unreasonable factual findings in light of the evidence presented. First, Lurvey argues that the State's question to Captain Ruff "[w]hat did the dog do" implied a positive alert by the drug dog at the hunting shack and the court of appeals erred in finding no implication of an alert. Second, Lurvey argues that the court of appeals erroneously found that the prosecution did not rely on the alleged drug dog alert to support its theory of the case.

The court of appeals found that the State's unanswered question did not imply a positive alert by the drug dog. (Docket # 14-5 at 6.) In so finding, the court of appeals stated that it was undisputed that Lurvey stored large quantities of cocaine and marijuana on his property, that Captain Ruff testified that no drugs were discovered in the shack, and that an implication that Captain Ruff considered the shack suspicious came from her earlier testimony that the shack could have been used to store drugs and though it contained only junk, it was secured with a padlock. (*Id.*) Further, the court of appeals found that the jury's question regarding whether police ever searched for drugs "in and around" the shack undermined Lurvey's assertion of an implicit alert. (*Id.*)

Lurvey has not shown that the court of appeals' determination that no positive alert was implied ignores the clear and convincing weight of the evidence. *Goudy*, 604 F.3d at 399. Captain Ruff never answered the question of "[w]hat did the dog do" and testified that no drugs were found in the shack when it was searched on September 10, 2002. Lurvey argues that the prosecutor "virtually admitted" the implication when she stated "What difference did it make if the drug dog alerted on this hunting shack?" (Docket # 16 at 17.) This statement is not evidence put before the jury; rather, it was a statement made by counsel during the course of her argument against Lurvey's

- 7 -

Case 2:14-cv-00226-NJ   Filed 01/06/17   Page 7 of 20   Document 22

motion for a mistrial. Further, the jury's question regarding whether they checked for drugs in and around the hunting shack using dogs or other methods does not indicate the jurors were "aware of the implication," as Lurvey suggests. The question could mean several things, including the court of appeals' interpretation that the question actually undermines the assertion of an implicit alert because the jury asked whether police ever searched for drugs. It could also mean that the jury merely forgot Captain Ruff's testimony that no drugs were found when the shack was searched. The court of appeals' finding that there was no implicit alert does not ignore the clear and convincing weight of the evidence.

Second, Lurvey argues that the court of appeals erroneously found that the prosecution did not rely on the alleged drug dog alert to support its theory of the case. The court of appeals' finding does not ignore the clear and convincing weight of the evidence. Cocaine being in the hunting shack was never the centerpiece of the State's case. Rather, this "theory" came from a statement made by the prosecution during its rebuttal closing argument. The defense argued during its closing argument that the prosecution had failed to show where the murders took place. Defense counsel stated:

> The state was intent on showing you that shack. It was intent on showing you the pond. But it never says that it happened at his residence and never says that it happened at the shack, never says that it happened at the pond. It will not commit. Because there is no evidence that it happened in any of those places.

(Docket # 15-12 at 63.) Thus, during its rebuttal closing argument, the prosecution stated that it had been "challenged to tell you my theory," and argued that Lurvey lured the victims to the shack to retrieve the cocaine that he told them was out there. (*Id.* at 112-13.) However, the prosecution acknowledged that this was speculation and noted that the judge had instructed the jury that reasonable doubt was not based on speculation. (*Id.* at 114.) The State never mentioned any canine

- 8 -

search in closing or rebuttal arguments. Thus, the location of the murder scene (or the alleged fact that cocaine was stored at the shack) was not a centerpiece of the State's case.

Finally, Lurvey argues that the court of appeals erroneously found that the alleged positive alert was not prejudicial. Lurvey specifically attacks the court of appeals' findings that the testimony showed that cocaine was stored throughout the Lurvey property and that Lurvey had recently moved the cocaine into his basement. It is true that Detective Robert Wepfer of the Waukesha County Sheriff's Department read a statement made by Lurvey into the record in which Lurvey stated that Long was storing "his cocaine at my residence" and "would store the cocaine in containers in [Lurvey's] basement." (Transcript of Jury Trial from June 25, 2011, Answer, Exh. Q at 74, Docket # 15-7.) Lurvey's statement does not indicate that cocaine was stored anywhere but in his basement. Kevin Cassidy testified that Lurvey was storing cocaine in drywall mud buckets; however, he did not testify as to where on the property the drywall buckets were stored. (Transcript of Jury Trial from June 21, 2011, Answer, Exh. M at 117-18, Docket # 14-15.) Rather, Cassidy testified that he never saw any of the drywall buckets anywhere on the Lurvey property. (*Id.* at 119.)

Chris Long testified that Lurvey was storing drugs "on the property, buried in five-gallons pails," and that when the victims come to retrieve the cocaine, that Lurvey "dug it up himself and had it at the house." (Transcript of Jury Trial from June 17, 2011, Answer, Exh. K-2 at 127, Docket # 14-12.) While Lurvey is correct that his house was "on the property," the court of appeals' interpretation of Chris Long's testimony does not ignore the clear and convincing weight of the evidence. Further, even if the bulk of the cocaine was stored in Lurvey's basement, the testimony revealed that cocaine was being used throughout the Lurvey property, including at the shop (Docket # 14-15 at 100) and near the pond (*id.* at 120). Cassidy also testified that after running out of cocaine

- 9 -

at the shop on a date after the murders allegedly occurred, he drove Lurvey down to the pond and Lurvey returned from a wooded area near the pond with some cocaine. (*Id.* at 182, (Transcript of Jury Trial from June 21, 2011 Continued, Answer, Exh. M-2 at 1-6, Docket # 14-16.) Cassidy did not testify, however, that Lurvey retrieved the cocaine from the shack. Thus, Lurvey has not shown that the court of appeals' factual findings ignored the clear and convincing weight of the evidence.

Lurvey also argues that the prosecution's failure to provide the drug dog's training and performance records violated his right to due process under *Brady v. Maryland*. In this case, in considering Lurvey's *Brady* claim, the Wisconsin Court of Appeals correctly stated that a *Brady* violation occurs where the State withholds exculpatory, material evidence from a defendant. (Docket # 14-5 at 5-6.) As such, the court of appeals identified the correct governing legal rule. Thus, the only issue before me to resolve on habeas review is whether the state court unreasonably applied that rule to the facts of Lurvey's case. In making that determination, it is important to recall that in a federal habeas corpus proceeding, the court's review is tempered by AEDPA's deferential constraints.

To receive a new trial based on a *Brady* violation, a defendant must show: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defendant; and (3) that it is material to an issue at trial. *See United States v. Daniel*, 576 F.3d 772, 774 (7th Cir. 2009) (internal quotation and citation omitted). "Favorable" evidence includes exculpatory substantive evidence, as well as evidence with impeachment value. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Daniel*, 576 F.3d at 774. In other words, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is

- 10 -

Case 2:14-cv-00226-NJ    Filed 01/06/17    Page 10 of 20    Document 22

material in the sense that its suppression undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678.

Lurvey has not shown that the state court unreasonably applied *Brady* to the facts of Lurvey's case. As the court of appeals correctly found, because Captain Ruff never answered the State's question "[w]hat did the dog do?," there was no drug dog testimony that he was unable to impeach with the drug dog records. Further, Lurvey has not shown that the drug dog records were favorable to him. The court of appeals noted that the drug dog records were not part of the appellate record and while Lurvey described the sorts of impeachment questions he might have asked, there was nothing suggesting that the answers would have been exculpatory. (Docket # 14-5 at 7.)

Finally, Lurvey has not shown that the evidence was material to an issue at trial. Even assuming that Captain Ruff would have testified that the drug dog made a positive alert at the shack and that the drug dog records would have allowed Lurvey to impeach the drug dog's findings, this would not have undermined confidence in the outcome of the trial. Lurvey argues that his version of events is that the cocaine was always in the basement and that he gave the victims the cocaine and they left the house with it. (Docket # 15-7 at 79.) He argues that the implication that the drug dog alerted at the hunting shack unfairly bolstered the prosecution's theory that Lurvey lured the victims to the shack to retrieve cocaine stored there and corroborated the credibility of some of the testimony of "the prosecution's key witness," Cassidy. (Docket # 16 at 19.) However, the prosecution never claimed it could prove where the murders took place. As previously stated, it was only in response to a statement in the defense's closing argument that the prosecution speculated that Lurvey told the victims that he kept the cocaine at the shack to lure them there to kill them. (Docket # 15-12 at 112-14) ("So a crime scene - - I have been challenged to tell you my theory. So now I will. It is

- 11 -

speculative because I don't know, because there were only three people there and I wasn't one of them."). In speculating, the prosecution did not mention a dog being used to search the shack. No witness, including Cassidy, testified as to where the murders took place.

It is clear that the location of the murder scene was not central to the prosecution's case, nor was the presence of cocaine in or around the shack. Lurvey has not shown that the drug dog evidence was material to an issue at trial. As such, Lurvey is not entitled to habeas relief on this ground.

    *2.    Use of "From the Grave" Hearsay Evidence*

Lurvey argues that the state court's admission of Andrew Long's "from the grave" hearsay through the testimony of Chris Long and Juan Robles violated his rights under the confrontation and due process clauses. The respondent argues that Lurvey procedurally defaulted this claim and even reaching the merits, Lurvey has not shown he is entitled to habeas relief. Prior to trial, Lurvey moved *in limine* to exclude the testimony of Juan Robles that Andrew Long had "some unspecified apprehension that there may be trouble when he goes to see Mr. Lurvey." (Transcript of June 15, 2011 Hearing, Answer, Exh. I at 47-48, Docket # 14-9.) The prosecution argued that it was admissible under Wis. Stat. § 908.03(3) as a state of mind exception to nontestimonial hearsay. (*Id.* at 50.) The trial court denied the motion and allowed the testimony. (*Id.* at 55.) The court of appeals upheld the trial court's finding, holding that the trial court properly determined the admissibility of the testimony under Wis. Stat. § 908.03(3).

Regarding Chris Long's testimony, the trial court allowed the prosecution to ask Chris Long whether Andrew Long had any "concern" about Lurvey, to which the answer was yes. (Transcript

- 12 -

of Jury Trial from June 20, 2011, Answer, Exh. L at 16-17, Docket # 14-13.) The court of appeals upheld the trial court's ruling.

### 2.1 Procedural Default

The respondent argues that Lurvey procedurally defaulted his confrontation clause and due process claims because he failed to present them as federal constitutional claims in the court of appeals. A federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his available state remedies prior to seeking federal habeas relief. *See* 28 U.S.C. § 2254(b); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). "This so-called exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus is the duty to fairly present his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

For a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). Whether a petitioner has done so depends on several factors, including: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004) (internal quotation and citation omitted).

- 13 -

In his brief to the Wisconsin Court of Appeals, Lurvey, who was represented by counsel, makes one reference to his rights under the confrontation clause and cites the Sixth Amendment and *Davis v. Alaska*, 415 U.S. 308 (1974). However, the remainder of Lurvey's argument is that the trial court abused its discretion in allowing the testimony under the state of mind exception. (Docket # 14-2 at 69-75.) The cases Lurvey cited in support of his argument before the court of appeals, *State v. Kutz*, 2003 WI App 205, 267 Wis. 2d 531, 671 N.W.2d 660, *United States v. Brown*, 490 F.2d 758 (D.C. Cir. 1973), and *State v. Stevens*, 171 Wis. 2d 106, 490 N.W.2d 753 (1992) involved evidentiary issues rather than federal constitutional issues.

Further, Lurvey did not frame the issue as constitutional. This is clear from the State's response to Lurvey's court of appeals brief. The State noted that Lurvey "misleadingly suggests that [he] is challenging the testimony of Juan Robles and a small portion of Chris Long's testimony only on confrontation grounds. In his discussion of the issue, however, Lurvey fails to mention confrontation . . . Lurvey's discussion of the issues reveals that he is challenging admission of the evidence on nonconstitutional grounds." (State Court of Appeals Brief, Answer, Exh. C at 32, Docket # 14-3.) Lurvey does not challenge or correct the State's statements in his reply brief and again fails to address the issue on constitutional grounds. (Lurvey Court of Appeals Reply Brief, Answer, Exh. D, Docket # 14-4.) *Verdin* requires that the state court be given the opportunity to "adjudicate squarely th[e] federal issue." 972 F.2d at 1474. After reviewing the briefs before the court of appeals, I cannot conclude that the state court was given this opportunity. The single reference to the Sixth Amendment and *Davis* is not enough. *See Chambers v. McCaughtry*, 264 F.3d 732, 739 (7th Cir. 2001) (finding that a "passing reference" to a constitutional argument "hardly placed the Wisconsin courts on notice that he was presenting the argument as an independent basis for relief").

- 14 -

As the Seventh Circuit stated in *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996), "counsel must sketch an argument" explaining why the conviction violates the relevant constitutional provision. Lurvey never argues how his constitutional rights were violated, nor does he correct the State when it argues that Lurvey was not raising a constitutional issue by his passing reference to the confrontation clause. Thus, it is not surprising that the court of appeals addressed the issue as an evidentiary one, as that is how Lurvey argued the issue. It is irrelevant, then, how Lurvey presented his claim to the trial court and to the Wisconsin Supreme Court, because to avoid procedural default, a habeas petitioner must fairly present a claim to each level of the state courts. *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). By failing to fairly present his claim to the Wisconsin Court of Appeals, Lurvey procedurally defaulted this claim.

Procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default or he can establish that the denial of relief will result in a miscarriage of justice. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Cause to overcome a procedural default requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must present evidence that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (quoting *United States v. Frady*, 456 U.S. 152 (1982) (emphasis omitted). The fundamental miscarriage of justice exception requires a showing that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (citation omitted). Lurvey does not attempt to establish that

he meets either of the exceptions to the procedural default bar. Thus, Lurvey is not entitled to habeas relief on his confrontation clause and due process claims.

    2.2    Merits

Even assuming Lurvey had fairly presented his confrontation clause and due process claims before the Wisconsin courts, he is not entitled to habeas relief on this ground. Regarding his confrontation clause claim, the Sixth Amendment ensures that an accused maintains "the right . . . to be confronted with witnesses against him." U.S. Const. amend. VI. However, this right under the confrontation clause is limited to evidence that is "testimonial." *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014). Although the Supreme Court has not spelled out a comprehensive definition of "testimonial" evidence, the "term clearly pertains to statements made in anticipation of or with an eye toward a criminal prosecution." *Jones v. Basinger*, 635 F.3d 1030, 1041 (7th Cir. 2011) (internal quotation and citations omitted); *see also United States v. Brown*, 822 F.3d 966, 974 (7th Cir. 2016) ("Testimonial statements are formal statements to government officers, or formalized testimonial materials such as affidavits, depositions, and the like, that are destined to be used in judicial proceedings."). Whereas statements that were not made in anticipation of prosecution are generally considered non-testimonial. *See Brown*, 822 F.3d at 974. Lurvey concedes, as his counsel did before the trial court, that Robles' statements were nontestimonial. ((Petitioner's Reply Br. at 19, Docket # 20, Docket # 14-9 at 47.) Lurvey also appears to concede that Chris Long's statements were nontestimonial. (Docket # 20 at 19.) Thus, because the statements are nontestimonial, the confrontation clause does not apply and Lurvey's Sixth Amendment claim must fail. *See Lee*, 750 F.3d at 694.

Regarding his due process claim, state court evidentiary rulings only implicate the due process clause when "evidence is so extremely unfair that its admission violates fundamental conceptions of justice." *Richardson v. Lemke*, 745 F.3d 258, 275 (7th Cir. 2014). However, Lurvey is incorrect that the standard of review is *de novo.* Because the state court did not overlook a claim fairly presented, rather, the state court addressed the claim how it was presented to it—as an evidentiary issue. Consideration of the Wisconsin Court of Appeals' decision is deferential, and relief will only be granted if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United State Supreme Court or was based on an unreasonable determination of the facts in light of the evidence presented. *Id.* at 276. Because the court of appeals' decision was based entirely on state rules of evidence, it is difficult to apply AEDPA's deferential standard. However, "a state court decision that does not cite federal precedent is still consistent with federal law so long as neither the reasoning nor the result of the state court decision contradicts the Supreme Court's decisions." *Id.*

Lurvey argues the court of appeals unreasonably applied the law to the facts in this case. The petitioner bears the burden of proving that the state court's application of federal law was unreasonable, and the "unreasonable application" prong of § 2254(d) "is a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir.2003). To unreasonably apply clearly established law, the Wisconsin Court of Appeals' ruling "on the claim being presented in federal court [must be] so lacking in justification that there was an error . . . beyond any possibility of fairminded disagreement." *Hanson v. Beth*, 738 F.3d 158, 163 (7th Cir. 2013) (internal quotations and citation omitted); *see also Jackson*, 348 F.3d at 662 ("[U]nreasonable means something like lying well outside the boundaries of permissible differences of opinion.") (internal quotation and citation omitted).

- 17 -

Wis. Stat. § 908.03(3) is an exception applicable whether or not the declarant is available and provides:

> **(3) Then existing mental, emotional, or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

In *State v. Kutz*, 2003 WI App 205, 267 Wis. 2d 531, 671 N.W.2d 660, the Wisconsin Court of Appeals addressed the applicability of Wis. Stat. § 908.03(3) in the context of a victim's statement of fear of the defendant. In *Kutz*, the State sought to admit a victim's statements that the defendant had threatened her. *Id.* ¶ 55. The State argued that the statements were admissible under Wis. Stat. § 908.03(3) to prove the threats were made because they showed the victim's state of mind—fear—at the time she made the statements. *Id.* ¶ 56.

The court of appeals found that the trial court erred in admitting the statements under the state of mind exception to prove the threats were made. *Id.* ¶ 62. In so finding, the court noted that the language of the exception applies to statements the victim made to others about her state of mind at the time she made them in order to prove that was her state of mind. In other words, "it would plainly allow statements [the victim] made to others that she was afraid of [the defendant] for the purpose of proving she was afraid of him." *Id.* ¶ 57. What the exception did not allow, however, was statements the victim made about the defendant's threats in order to prove that he threatened her. *Id.*

The court of appeals' finding that the testimony properly showed Andrew Long's then existing state of mind was not so lacking in justification that there was error beyond any possibility of fairminded disagreement. A declarant's statement of his feelings are admissible to prove how the

- 18 -

declarant felt; but a declarant's statements as to the cause of his feelings are not admissible to prove the event occurred. *Id.* ¶ 60. I agree with the court of appeals' finding that Robles' testimony that Andrew Long had "grown leery of" and "no longer trusted" Lurvey and Chris Long's testimony that Andrew Long had "a concern" about Lurvey, shows Andrew Long's state of mind of fear or apprehension of Lurvey.

Lurvey also argues that the statements were irrelevant. As the *Kutz* court noted, the issue of relevancy is distinct from the applicability of Wis. Stat. § 908.03(3). *Id.* ¶ 59. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01. Under Wis. Stat. § 904.03, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. The court of appeals found that the evidence of Andrew Long's state of mind was relevant to explain why Long went to collect the drugs, why he brought Lazzaro with him to confront Lurvey, and the growing animosity between Long and Lurvey. (Docket # 14-5 at 14.) And although the court of appeals does not explicitly weigh prejudice, habeas relief should not be granted if the state court decision can be said to be one of several equally plausible outcomes. *Jackson*, 348 F.3d at 662. Lurvey has not shown that the court of appeals' application of federal law was unreasonable. As such, he is not entitled to habeas relief on this ground.

**CERTIFICATE OF APPEALABILITY**

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

- 19 -

constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

I find that the issues presented were adequate to deserve encouragement to proceed further and thus will grant Lurvey a certificate of appealability.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 6) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of January, 2017.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge